IN THE

# SUPREME JUDICIAL COURT,

IN THE

## COUNTY OF PENOBSCOT,

ARGUED MAY TERM, 1843.

---

### AMOS M. ROBERTS *versus* BENJAMIN BOURNE.

An attachment of all the debtor's "right, title and interest in and to any real estate in the County of P." is valid, and sufficient to hold all his real estate in that county, subject to attachment in that suit.

And such language is effectual to create an attachment of the estate, when the debtor has made a conveyance of his title to another person, but the deed has not been recorded.

If the debtor, who had taken a deed of the premises, made prior to the attachment, but not recorded until afterwards, has conveyed the same premises to another, and the last deed was recorded before the attachment, this cannot be regarded as giving notice of such unrecorded deed.

THIS case was argued in 1841, when the present Reporter did not hold the office, and no papers, except the opinion, came into his hands. The facts, however, sufficiently appear in the opinion of the Court.

*Moody*, for the demandant.

*Kent & Cutting*, for the tenant.

The opinion of the Court was delivered at the October Term, 1843, as drawn up by

SHEPLEY J. — It appears from the agreed statement, that John Bourne on the 21st of February, 1835, conveyed the

Roberts *v.* Bourne.

premises to David Greeley ; who on the same day reconveyed them in mortgage to Bourne. Both these conveyances were recorded in March following. Greeley on the 12th of August, then next by deed of release conveyed his interest to Ransom Clark, but this deed was not recorded until the 18th of August, 1837. And it does not appear, that he entered into possession of the premises. Clark by deed bearing date on the 8th of August, 1835, four days before he had acquired any title from Greeley, conveyed to the defendant ; and this deed was recorded on the 13th day of August following. On the first day of January, 1836, Robert Farley caused all Greeley's " right, title, and interest, in and to any real estate in the county of Penobscot" to be attached ; and afterwards obtained a judgment and caused Greeley's right in equity to be seized and sold, and the plaintiff became the purchaser.

It was decided in *Crosby* v. *Allyn*, 5 Greenl. 458, that an attachment of all the debtor's right, title and interest to real estate in Belfast and Thorndike, was valid. In *Whitaker* v. *Sumner*, 9 Pick. 310, the officer returned, " I attach all the right, title and interest in and to a certain piece or parcel of land with the buildings thereon situate in Columbia street at the southerly part of Boston ; and one piece of land and the buildings thereon standing being situate in Pleasant street in said Boston, which the within named Benjamin Huntington has to the estates before mentioned." And the Court say, " the return of the attachment on the plaintiff's writ against Huntington has as much certainty as returns in general of attachments on mesne process" ; and it was decided to be good. In *Taylor* v. *Mixter*, 11 Pick. 341, the return was, " I have attached all the right, title and interest, which the within named Ruggles has to his homestead farm, on which he now dwells, together with all the land thereto belonging lying in Enfield in said county. Also all the right and interest, which said Ruggles has to any lands lying in Enfield aforesaid." It was decided to be a valid attachment of any other lands in Enfield, which might not be a part of the farm. These cases sufficiently prove, that an attachment is good, though made in

as general language as the officer used in this case. And that it has been a common practice sanctioned by the courts, for officers, when they intended to attach certain real estate as the property of the debtor, to make use of the words " right, title and interest" in and to it, for the purpose of accomplishing it. These words were probably introduced with a design to enlarge and not to diminish the effect of an attachment of a farm or tract of land, so as to secure not only the fee, but whatever right the debtor might have in it, as an estate for life, or for years, or by way of contract in writing, or the right to redeem it. In all these cases, the debtor had not conveyed the title to another, but was the owner at the time of the attachment.

And it is contended, that such language is not effectual to create an attachment of the estate, when the debtor has conveyed his title to another person, although such conveyance has not been recorded. The case of *Adams* v. *Cuddy*, 13 Pick. 460, is relied upon as exhibiting a close analogy to the present case. It was in that case decided, when the owner of land in Boston had conveyed it to another person, describing it by metes and bounds, and subsequently executed a second deed conveying "all the right and title to the land I have in Boston," which was recorded before the first; that the land conveyed by the first was not within the description of the estate conveyed in the second deed, and so did not pass to the second grantee. There could be no doubt of the intention of the grantor in making the second deed. The first was effectual against him, and he could not be presumed to intend to commit a fraud upon one of his two grantees by conveying the land a second time. And there was nothing in the deed to destroy the effect of such a presumption. But there is no such presumption of law operating against a creditor or an officer. They are not placed in a similar position; and the law permits them to avail themselves of the neglect of a grantee to record his deed without imputing to them any fraudulent design. And there is no similar intention to be discovered in such grantor and the officer or creditor. Does the offi-

cer, when he uses the words right, title and interest in and to land, intend to attach only, what the debtor has never conveyed away? Is not the intention rather to attach all the right ·title and interest, which by any words may be liable to be attached as the debtor's estate? Will it be contended, that an attachment of all the debtor's right, title and interest in and to a farm described by metes and bounds would not be good against a prior conveyance of it not recorded? The intention in such a case could not be doubted. Yet if a technical construction of the officer's language is to prevail, it may be truly said, that the debtor himself had no legal interest and therefore an attachment of his right, title and interest in and to it amounted to nothing. And if such an attachment were made of an estate fraudulently conveyed by the debtor, and the conveyance recorded before the attachment, the result would be the same. The Court say, in *Taylor* v. *Mixter,* " had the tenant caused an attachment of the debtor's *interest* in twenty or a hundred different parcels of estate to be made, it is not contended, that the attachment would not have been effectual, had they been specifically returned." It is not easy to imagine a case in which there would be less reason or more danger in considering language to be used with technical accuracy, than in an officer's return upon a writ. The very idea of doing so almost deprives it of a sober consideration. And it would be in principle opposed to the case of *M'Mechan* v. *Griffing,* 9 Pick. 537. It appeared in that case, that the five sons of Timothy Griffing undertook to divide their late father's estate among themselves; and that the division was made by executing deeds of release to each other on the 9th of May, 1821, which were not recorded until the 5th of March, 1822. And that the petitioner attached the son Timothy's "undivided share" on the 12th of February, 1822. The decision was, "that the plaintiff's attachment of February 12, 1822, was a valid attachment of Timothy Griffing's undivided share of the premises." And yet at the time of the attachment he had in himself no undivided share. A conclusive objection to all the reasoning against the validity and effect of the attachment in

the present case will be found in the statute, c. 36, § 1, which declares, that no conveyance of lands shall be effectual against any other but the grantor and his heirs, unless the same be acknowledged and recorded. The deed therefore from Greeley to Clark, not having been recorded, must be considered as inoperative against all others but Greeley and his heirs. So far as he and they were concerned, he had no interest at the time of the attachment; but so far as others were concerned he had in judgment of the law "a right, title and interest in and to it," because the deed had not been recorded. If there had been no conveyance, the case of *Crosby* v. *Allyn*, decides that the attachment would have been good. And the statute decides, that as to all but the grantor and his heirs, the deed to Clark shall not be effectual; and the attachment is therefore, as respects the officer, the creditor, and the plaintiff, as effectual, as it would have been, if no such deed had been in existence.

It is next contended, that the record of the deed from Clark to the defendant, made before the attachment, gave notice of the conveyance from Greeley to Clark. But the fact, that Clark had conveyed the premises to the defendant, would not afford one, who wished to purchase them of Greeley, any satisfactory evidence, that Clark purchased of Greeley or had a right to convey to the defendant. The record cannot be regarded as giving notice of any facts not stated in it, or not to be expected in the ordinary course of business to be found in it. In the case of *Bates* v. *Norcross*, 14 Pick. 231, it was decided, that the record of a conveyance is only notice to after purchasers under the same grantor.

It is said also, that the defendant by proving the execution and record of his deed performed all which the statute required of him, and that he therefore obtained a perfect title. And he did do all required of him to secure to himself all the title, which his grantor could convey. But that did not relieve him, if he would be careful to obtain a perfect title, from the necessity of making an examination into the title of his grantor. Again, it is said, that the title vested in Clark

without any record of his deed. And it did so as between the parties to that deed, but the statute deprives it of any legal effect so far as others are concerned.

*Judgment for the plaintiff.*