## MANUEL M. CALHAU *v.* SOCIEDADE DE SANTO ANTONIO BENEFICENTE DE HAWAII AND JOHN C. ANDERSON.

### No. 1369.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT. HON. J. T. DeBOLT, JUDGE.

SUBMITTED FEBRUARY 24, 1922.  DECIDED MARCH 16, 1922.

COKE, C. J., KEMP AND EDINGS, JJ.

ATTACHMENT—*levy of upon real estate—how made.*

> Under our statute an attachment is levied upon real estate by the sheriff filing in the office of the registrar of conveyances a copy of the writ of attachment with his certificate indorsed thereon that by virtue of the original writ he has attached such real estate or all of the interest of the defendant therein, describing the same with certainty.

SAME—*same—same.*

> A compliance with the provisions of section 2358 R. L. 1915, while essential to the completion of a title under the lien established by the levy of an attachment, constitutes no part of the levy itself.

SAME—*priority between attachment and unrecorded deed.*

> Where an attaching creditor levies his attachment without notice of a prior unrecorded deed of the debtor, either actual or constructive, he acquires a lien which if perfected by judgment, execution, sale and deed will hold the legal estate as against the grantee in such deed; and having acquired such a lien he will

have a right to enforce the same notwithstanding he may have subsequently to the levy of his attachment received notice of the deed.

SAME—*same—possession as notice.*

Where one causes an attachment to be levied upon real estate as the property of A in the possession of B, who held an unrecorded deed to said land from A, it is incumbent upon the party causing such levy to be made to make reasonable inquiry as to the rights of the person in possession and having failed to do so he cannot assert that he had no notice of such rights at the time he levied his attachment.

OPINION OF THE COURT BY KEMP, J.

This is an action in ejectment brought by the plaintiff against the defendants to recover the possession of Lot 37 as designated on registered map No. 94 of the tract of land known as the "Mendonca Lots," situated at Oloku near Liliha street in Honolulu, and more particularly described in the declaration. Both the plaintiff and the defendants claim title under John Mattos, Jr. Trial by a jury having been waived the cause was heard by the court without the intervention of a jury and resulted in a decision and judgment in favor of the defendants. The plaintiff brings exceptions.

Counsel for the defendants contend that all of the exceptions which are sufficiently definite to authorize this court to consider them have been abandoned. We hold that exceptions one to sixteen, inclusive, relative to the admission of evidence, for the failure of plaintiff to argue them, have been abandoned. (*Stewart* v. *Spalding,* 26 Haw. 162; *Estate of Afong,* 26 Haw. 147.) We also think that the remaining exceptions, numbers seventeen and eighteen, to the decision and judgment might properly be regarded as too general to require us to consider them but we have decided to dispose of the questions argued under them.

There is no controversy as to the facts. It appears

that on the 23d day of August, 1917, the plaintiff, Manuel M. Calhau, having sued John Mattos, Jr., in assumpsit, caused a writ of attachment to be issued in said cause and placed in the hands of Patrick Gleason, deputy high sheriff of the Territory, for service, who on said day at 12:25 o'clock p. m. duly filed a copy of said writ with a proper certificate indorsed thereon showing a levy of said attachment upon the lot in question in the office of the registrar of conveyances. On August 24, 1917, personal service of the summons in the action of assumpsit (*Calhau v. Mattos*), in which the writ of attachment was sued out, was served on Mattos and personal delivery made to him of the notice of attachment. On August 27, 1917, notice of the attachment was posted on the land, and on August 28, 1917, a certificate of attachment was published in the Pacific Commercial Advertiser, a newspaper printed and published in Honolulu. Thereafter on February 3, 1919, Calhau recovered judgment against Mattos in said action of assumpsit and caused an execution to be issued and levied upon the property theretofore attached. At the sheriff's sale under said execution, which was not until March 24, 1919, the plaintiff in that action, being also the plaintiff in this ejectment proceeding, became the purchaser, and having procured a deed from the sheriff conveying to him all the right, title and interest of the defendant Mattos in and to said lot and having placed it of record demanded possession of the defendants, which was refused. He thereupon instituted this action of ejectment. The plaintiff having established all of the above facts and having entered into an oral stipulation in court that the defendants were in possession of the lot in question and had been since prior to the beginning of the action in assumpsit against Mattos and the levy of the attachment rested. The defendants produced a written, but unrecorded, agreement dated August 20, 1917, exe-

cuted by John Mattos, Jr., and the defendant Anderson, whereby Mattos agreed to sell, and Anderson agreed to purchase, the lot in question for the sum of $500 cash, the receipt of which is acknowledged, and deferred payments totaling $2200. There was testimony to the effect that this agreement was executed and delivered on August 21, 1917, and the circuit judge so found, although the certificate of acknowledgment is dated August 23, 1917. Defendants also produced a written unrecorded assignment and transfer of said agreement of sale and purchase by John Mattos, Jr., to the defendant Sociedade Portugueza de Santo Antonio Beneficente de Hawaii dated August 23, 1917, which also contains a clause conveying to said society "all of my estate, right, title and interest in and to the land and hereditaments mentioned and described in said agreement of sale and purchase." There was oral evidence to the effect that this transfer although dated and acknowledged August 23, 1917, was executed and delivered on August 21, 1917, and the circuit judge so found. There was other evidence admitted at the trial relative to the prior oral negotiations between Anderson and Mattos and relative to the open character of the possession of the lot in question by Anderson prior to the 23d day of August, 1917, which we do not deem it necessary to detail.

Under this state of facts it is the contention of the plaintiff that the only question presented is one of statutory construction, namely, whether the levy of an attachment is complete when a copy of the writ with the officer's certificate is filed with the registrar of conveyances. On the other hand the defendants contend that the assignment and transfer of the agreement of sale and purchase by Mattos to the society was in effect a deed and since the evidence shows, and the circuit judge found, that it was executed and delivered on August 21 that Mattos at the

time of the levy, even admitting that the levy was complete upon the filing of the writ and certificate with the registrar of conveyances, had no interest in the land attached. They further contend that the levy of attachment is not complete until all the requirements of section 2358 R. L. 1915 are complied with and that the deed of August 23, 1917, was therefore executed, delivered and recorded prior to the levy of the attachment. We will consider this last question first.

The sections of the statute which we deem it necessary to consider are as follows:

"Sec. 2781.  Issued when. The plaintiff, in any action upon a contract, express or implied, may, at the time of commencing such action, or at any time afterward before judgment, have the property of the defendant, or that of any one or more of several defendants, which is not exempt from execution, attached in the manner hereinafter prescribed, as security for the satisfaction of such judgment as he may recover. * * * "

"Sec. 2788.  Writ, how executed. The sheriff to whom the writ is directed and delivered, must execute the same without delay as follows:

"1. Real property or any interest therein shall be attached by filing in the office in which conveyances of the real property attached should be recorded, a copy of the writ of attachment, with the officer's certificate indorsed or affixed, that by virtue of the original writ of which such copy is a true copy, he has attached such real estate, or all of the interest of the defendant therein, describing the same with convenient certainty as the property of the defendant, naming him, in such writ. * * * "

"Sec. 2358.  In case of attachment, etc., of real property. In all cases of attachment, sequestration or injunction of real property, the officer serving the writ shall, in addition to personal delivery of a copy thereof to the defendant, post upon the premises a copy of the process, and a notice of the day and hour when attached, sequestered or enjoined, and shall also give notice thereof in a newspaper or newspapers suitable for the advertisement

of judicial proceedings. All after-leases, mortgages, sales, devises, assignments, trusts or other conveyances of said property, until the dissolution of the process, shall be void in law as against the plaintiff in such cases."

From a reading of section 2781 it will be seen that the object of an attachment is to provide security for the satisfaction of such judgment as may afterwards be recovered in the case in which the attachment is issued. Section 2788 provides how an attachment shall be executed by the sheriff and is to the effect that real property shall be attached by filing in the office in which conveyances of real property should be recorded (in this jurisdiction the office of the registrar of conveyances) a copy of the writ with the proper certificate of the sheriff indorsed thereon. In the chapter in which these two sections of the statute appear no mention is made of any other action by the sheriff being necessary in the levy of an attachment on real estate. The language is that "real property or any interest therein shall be attached by filing," etc. We hold therefore that the levy of the attachment was complete when the sheriff filed a copy of the writ with his certificate indorsed thereon in the office of the registrar of conveyances and since this was done at 12:25 o'clock p. m. on August 23, 1917, the defendants' recorded deed, which was admittedly not executed until 2:15 o'clock p. m. on that day and filed for record at 4:06 o'clock p. m., was after, instead of prior to, the levy of the attachment. We are supported in this holding not only by the wording of our statute but also by the decisions from other jurisdictions dealing with a similar situation. (*Schoonover* v. *Osborne,* 111 Ia. 140, 82 N. W. 505, 82 Am. St. Rep. 496, and cases cited.)

We think that the provisions of section 2358 R. L. 1915, requiring notice to be served on the defendant in the action, can have no other purpose than that of better enabling him to guard any interests he may have in the

property attached. If so, there is no reason for considering it a part of the levy and thereby putting it in the power of the debtor by sale or the execution of a mortgage to defeat the attaching creditor however diligent. As to the other requirements of section 2358 the language is significant. The copy of the process required to be posted on the land must have indorsed thereon the "day and hour when attached" and the newspaper notice must give the same information. The section concludes with the provision that "all after-leases * * * sales * * * or other conveyances of said property until the dissolution of the process shall be void in law as against the plaintiff in such case." This notice presupposes some prior act of the sheriff which constituted a levy of the attachment, after which conveyances should be void, and could refer to nothing but the filing of a copy of the writ and his certificate in the office of the registrar of conveyances. It is undoubtedly true that all of the requirements of section 2358 must be complied with in order to complete a title under the lien established by the levy, but they constitute no part of the levy itself.

We come now to a consideration of the effect of the unrecorded instruments which the defendants produced as well as the admitted possession of the lot in question by the defendants at the time of the levy of the attachment. In 2 R. C. L. 860, 861, it is said: "In the absence of statutory regulation it is the rule that an unrecorded deed or mortgage is effectual as against a subsequent attachment of the land as the property of the grantor or mortgagor. * * * In many jurisdictions statutes are in force that in effect place an attaching creditor in the same position as a purchaser. In those jurisdictions the broad common law rule just stated has been limited and it has been declared that a creditor having actual knowledge of a previous unregistered conveyance of land by his debtor

for a valuable consideration cannot by an attachment and levy obtain the title thereto against the grantee. Where, however, an attaching creditor levies his attachment without notice of a prior unrecorded deed of the debtor, either actual or constructive, he, acquires a lien which if perfected by judgment, execution, sale and deed will hold the legal estate as against the grantee in such deed; and having acquired a lien as an innocent creditor without notice he will have a right to enforce the same notwithstanding he may have, subsequently to the levying of his attachment, received notice of the deed. As to whether an attaching creditor had notice the rule is that he is chargeable with notice in the same manner and with like effect as a subsequent purchaser." We think the defendants have brought themselves within both rules above set forth. If the broad rule announced—that an unrecorded deed is effective against a subsequent attachment—is applicable the defendants must prevail for the unrecorded assignment and transfer of the agreement of sale and purchase, held by the circuit judge to have the effect of a deed, was prior to the attachment. Likewise if the local statutes on the subject had the effect given to the statutes in some other jurisdictions—that of putting the attaching creditor in the same position as a purchaser—they must prevail, for it is stipulated that at the time of the levy of the attachment and prior thereto the defendants were in possession of the lot in question, which possession was under the rule prevailing in this jurisdiction notice of all the rights of the parties in possession. (*Yee Hop* v. *Young Sak Cho,* 25 Haw. 494; *Achi* v. *Kauwa,* 5 Haw. 298.) The case of *Roberts* v. *Bourne,* 23 Me. 165, 39 Am. Dec. 614, upon which the plaintiff relies for the proposition that the lien of attachment takes priority over an unrecorded deed, is distinguished from the case at bar by the fact that in that case the holder of the unrecorded deed

was not in possession at the time of the levy of the attachment and by the further fact that the Maine statute provides that no conveyance of lands shall be effectual against any other but the grantor and his heirs unless the same be acknowledged and recorded, while our statute provides that an unrecorded deed shall be void only as to subsequent purchasers in good faith and for a valuable consideration not having actual notice thereof. (Sec. 3118 R. L. 1915.)

Our conclusion is that the unrecorded instruments produced by the defendants had the effect of transferring to the defendants all the right, title and interest which John Mattos, Jr., had in the lot in question and that it was incumbent upon the plaintiff to make reasonable inquiry as to the rights of the persons in possession and having failed to do so he cannot now assert that he had no notice of such rights at the time he levied his attachment.

The exceptions should therefore be overruled and it is so ordered.

*Andrews & Pittman* and *O. P. Soares* for plaintiff.

*Perry & Matthewman* for defendants.

### CONCURRING OPINION OF EDINGS, J.

I concur in the conclusion reached, namely, that the exceptions should be overruled.